United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Pamela Taylor, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 20-22161-Civ-Scola |
| Royal Caribbean Cruises Ltd., a | ) |
| Liberian Corporation, Defendant. | ) |

**Order Granting Motion to Dismiss**

    This maritime action arises from damages Plaintiff Pamela Taylor sustained when she was injured while a passenger aboard the *Allure of the Seas*, a cruise ship owned and operated by Defendant Royal Caribbean Cruises Ltd. ("RCCL"). (Am. Compl. ("Compl." Or "complaint"), ECF No. 6 at ¶¶ 9-10.) The Court struck Taylor's initial complaint because it was a shotgun pleading, impeding the Defendant's and the Court's assessment of Taylor's claims. Taylor filed the instant version of her complaint on June 23, 2020, which fixed some of her earlier complaint's shortcomings. The complaint asserts three counts. Count I is for Negligent Failure to Warn, Count II is for Negligent Maintenance of the Gangway Flooring, and Count III is for Negligent Failure to Follow Disembarkation Policies and Procedures. RCCL moved to dismiss, Taylor filed a response, and RCCL filed a reply. (Def.'s Mot., ECF No. 11; Pl.'s Resp., ECF No. 12; Def.'s Reply, ECF No. 13.) After careful consideration, the Court agrees with the Defendant and **grants** the motion to dismiss (**ECF No. 11**.)

1. **Background.**[1]

    Taylor was severely injured aboard the *Allure of the Seas* on or about May 26, 2019, "when she tripped and fell," resulting in a surgery to treat a left tibial plateau fracture, while "disembarking the vessel on a dangerous condition." (ECF No. 6 at ¶¶ 18, 20.) One of the "busiest" areas of the ship is the gangway, a pedestrian walkway, or "ramp," that connects the ship to land for embarkation and disembarkation. (*Id.* at ¶¶ 15-16.) Embarkation and disembarkation appear to be prone to crowding and bottlenecks. From its launch in 2009 until June 2016, the *Allure of the Seas* was the world's largest passenger vessel. (*Id.* at ¶13.) At maximum capacity, it can carry almost 9,000 individuals. (*Id.* at ¶14.)

---

[1] The Court accepts Taylor's factual allegations as true for the purposes of evaluating RCCL's motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

The complaint alleges that RCCL's failure to make the disembarkation process safe resulted in Taylor's injury. Specifically, it alleges that RCCL is aware that due to the high traffic during disembarkation, "there is a need for Defendant to provide sufficient warnings, order, and organization so as to maintain a safe and even-flow of passengers . . . ." (*Id.* at ¶16.) Additionally, the complaint alleges RCCL knew that a lack of organization, warnings, and direction during disembarkation "can cause jams, slowed exiting, and packed crowds, resulting in potential pushing and shoving and people tripping, falling and injuring themselves on the uneven gangway exiting the vessel." (*Id.*) Relatedly, RCCL allegedly knew that "a lack of maintenance and inspection of its gangway flooring and surrounding area create dangerous conditions, which can cause – and have in the past – trip and fall incidents . . . ." (*Id.*)

### 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading must only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *See* Fed. R. Civ. P. 12(b)(6). In assessing the legal sufficiency of a complaint's allegations, the Court is bound to apply the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, the complaint "must . . . contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "Dismissal is therefore permitted when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006) (internal quotations omitted) (citing *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* A court must dismiss a plaintiff's claims if he fails to nudge his "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Id.* at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

### 3. Analysis

"To prevail on a negligence claim, a plaintiff must show that (1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (quotations omitted). "With respect to the duty element in a maritime context, a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel." *Id.* (quotations omitted). To prevail on a negligence or failure-to-warn claim with respect to a dangerous condition, a plaintiff must show that the defendant "had actual or constructive notice of a risk-creating condition, at least where, as here, the menace is one commonly encountered on land and not clearly linked to nautical adventure." *Id.* (quotations and alterations omitted); *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (requiring notice with respect to a duty-to-warn claim); *Horne v. Carnival Corp.*, 741 Fed. App'x 607, 609 (11th Cir. 2018) (requiring notice with respect to a failure-to-maintain claim).

Each Count of the complaint must be dismissed because the complaint fails to adequately allege causation. The Court is mindful that notice pleading does not require the pleader to allege a "specific fact" to cover every element or to plead "with precision" each element of a claim, but it is still necessary for a complaint to "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). As explained below, at no point does the complaint meet the third element of negligence; namely, that "the breach actually and proximately caused the plaintiff's injury." *Guevara*, 920 F.3d at 720. As the complaint fails to satisfy this threshold requirement, the Court need not and does not reach the question of RCCL's notice of the purportedly dangerous condition.

Count I, for negligent failure to warn, must be dismissed for failure to properly allege causation. In *Flaherty v. Royal Caribbean Cruises, Ltd.*, the Court held that the plaintiff failed to sufficiently plead that the defendant's failure to warn proximately caused his injury, as the complaint ""fail[ed] to

allege any facts that would put Royal Caribbean on notice of what caused Plaintiff to fall." Case No. 15-22295, 2015 WL 8227674 at *4 (S.D. Fla. Dec. 7, 2015) (Lenard, J.) (alteration added; emphasis in original). The same result is warranted here. Taylor's complaint alleges that the gangway, which is used for embarkation and disembarkation, was "uneven." (ECF No. 6 at ¶16.) The complaint also alleges that crowding on the gangway "*can cause* jams, slowed exiting, and packed crowds, resulting in *potential* pushing and shoving and people tripping . . . ." (*Id.* (emphasis added).) The complaint goes on to allege that RCCL "is aware that a lack of maintenance and inspection of its gangway flooring and surrounding area create dangerous conditions, which *can cause* – and have in the past – trip and fall incidents while passengers are walking on the gangway." (*Id.* (emphasis added).)

While the complaint repeatedly alleges that the purportedly dangerous conditions "*can cause*" injuries, at no point does it affirmatively allege that the dangerous conditions *did cause* Taylor's injuries. Was the gangway so crowded that she could not see its unevenness? How uneven was the gangway? The complaint describes the gangway as a "ramp," which would make it sloped, or "uneven," by definition. (ECF No. 6 at ¶16.) The complaint also suggests that Taylor could have been "push[ed] and shov[ed]." (*Id.*) The complaint only raises these and other questions. It does not answer them. Leaving the causation-in-fact inquiry to guesswork falls short of the pleading standard. Additionally, at least one of these potential causes – pushing and shoving – is particularly problematic because if the "Plaintiff was injured after being pushed by a fellow tourist[,] [s]uch an incident would likely be a supervening cause absolving Defendant of liability." *Brown v. Oceania Cruises, Inc.*, Case No. 17-22645-CIV, 2017 WL 10379580, at *4 (S.D. Fla. Nov. 20, 2017) (Altonaga, J.).

The Plaintiff attempts to distinguish *Brown* by arguing that the complaint in that case did not explicitly state that Ms. Brown fell – rather, the complaint in that case "jump-cuts" from describing the dangerous condition (traversing over "treacherous rocks and boulders") to describing Ms. Brown's injury. (ECF No. 12 at 5-6.) However, the court's concern in *Brown* was not that the complaint did not allege that Ms. Brown fell. The *Brown* court, like this Court, was expressly concerned with the proximate cause of the injury. *See id.* at *5 ("The Court does not know one way or the other whether a failure to warn by Defendant could have plausibly been a proximate cause of Plaintiff's injury."). Although the *actual* cause of an injury might be the blunt force trauma arising from a fall, neither Ms. Brown nor Taylor alleged the *proximate*, or legal, cause of the injury. Without alleging what caused Taylor's fall (and the resulting injury), the complaint does not give RCCL notice as to what warnings would have been adequate to help Taylor avoid the fall.

The additional allegations specific to Count II, for negligent maintenance of the gangway flooring, fare no better. Count II alleges that RCCL breached its duty of care to Taylor by "failing to reasonably maintain the flooring, including but not limited, to inspecting the gangway for worn and damaged treading, unreasonably large gaps in the flooring, loose screws in the flooring, as well as structural and other components of the flooring that was [sic] not in proper condition . . . ." (ECF No. 6 at ¶29.) The Court accepts these allegations as true. But even if RCCL breached its duty to maintain treading, close gaps in the flooring, and tighten screws, the complaint does not allege that these failures caused Taylor's injuries. Again, RCCL is left to guess whether Taylor slipped on substandard treading, lost her balance after her foot fell into one of the "unreasonably large gaps," or tripped on a loose screw. In her response to the motion to dismiss, Taylor argues that she alleges that the cause of injury was the "unevenness of the gangway flooring surface." (ECF No. 12 at 8.) Taking that as true, the complaint does not allege that maintaining the treading, closing gaps, or tightening "screws in the flooring" would have removed the "unevenness." A plaintiff cannot recover for a breached duty without showing that said breach caused her injuries.

The Court also dismisses Count III, which alleges that RCCL failed "to follow its own policies and procedures . . . ." (ECF No. 6 at ¶31.) Those policies and procedures include "limiting the number of passengers exiting the gangway at a single time, reducing the flow of passengers' movement off the vessel, permitting too many passengers to carry luggage and other items off the vessel, having only the scheduled passengers exit during their proper disembarkation time, for the benefit and safety of passengers." (*Id.*) The failure to adequately allege causation plagues Count III as well, and the allegations specific to Count III only amplify the complaint's shortcomings by introducing the possibility that luggage may have had a role in Taylor's injury. Two things can be true at the same time: (1) RCCL permitted too many passengers to carry luggage and other items off the vessel; and (2) excess luggage on the gangway had no causal relationship to Taylor's injuries. In other words, Taylor did not allege that the failure to follow policies and procedures is related to her injuries.

### 4. Conclusion

For the reasons set forth above, the Court **grants** RCCL's motion to dismiss for failure to state a claim (**ECF No. 11**). The Court dismisses Taylor's claims against RCCL **without prejudice** and **without leave to amend**. *Avena v. Imperial Salon & Spa, Inc.,* 740 Fed. App'x 679, 683 (11th Cir. 2018) ("[W]e've rejected the idea that a party can await a ruling on a motion to dismiss before filing a motion for leave to amend.") (noting also that "a motion for leave to

amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (quotations omitted).

The Clerk is directed to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered**, in Miami, Florida on November 19, 2020.

Robert N. Scola, Jr.
United States District Judge